No. 23-20481

# In the United States Court of Appeals for the Fifth Circuit

---

Richard Lowery,

*Plaintiff-Appellant,*

v.

Texas A&M University; Annie S. McGowan; N. K. Anand; Mark A. Welsh III, Interim President of Texas A&M University; Alan Sams,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Southern District of Texas
Case No. 4:22-cv-03091

---

## REPLY BRIEF OF APPELLANT RICHARD LOWERY

---

Gene P. Hamilton
Vice-President and General Counsel
America First Legal Foundation
611 Pennsylvania Avenue SE, #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff-Appellant*

# Table Of Contents

Table of contents ..................................................................................... i

Table of authorities .................................................................................ii

I. Professor Lowery has standing to sue because he is "able and ready" to apply to Texas A&M and he has alleged that the university's hiring practices prevent him from competing on an equal basis .............................. 1

   A. Professor Lowery has shown, by a preponderance of the evidence, that he stands "able and ready to apply" for a faculty position at Texas A&M ..................................................................................... 6

   B. Professor Lowery has alleged that Texas A&M's discriminatory hiring practices prevent him from competing on an equal basis with female and non-minority faculty candidates ............................................11

   C. Professor Lowery has shown, by a preponderance of the evidence, that Texas A&M's discriminatory hiring practices would prevent him from competing on an equal basis with female and non-minority faculty candidates when he sued on September 22, 2022......... 13

II. The district court should have allowed Professor Lowery to take discovery before ruling on the factual evidence in the defendants' Rule 12(b)(1) motion ............................................................................... 16

III. Professor Lowery's claims are neither moot nor unripe ............................. 19

   A. Professor Lowery's claims are not moot................................................ 19

   B. Professor Lowery's claims are ripe ....................................................... 23

IV. The district court abused its discretion in denying Professor Lowery's motion for leave to amend his complaint ...................................... 24

Conclusion .......................................................................................... 25

Certificate of service .......................................................................... 26

Certificate of compliance ..................................................................... 27

Certificate of electronic compliance.......................................................28

## TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) ................................ 23

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) ..................................... 15

*Boudreaux v. Louisiana State Bar Ass'n*, 86 F.4th 620 (5th Cir. 2023) .................... 21

*Carney v. Adams*, 592 U.S. 53 (2020) ........................................... 1

*Carr v. Alta Verde Industries, Inc.*, 931 F.2d 1055 (5th Cir. 1991) ............................ 20

*Daves v. Dallas County*, 64 F.4th 616 (5th Cir. 2023) (en banc)............................. 20

*Escobedo v. Estelle*, 655 F.2d 613 (5th Cir. 1981) ...................................... 16

*Eubanks v. McCotter*, 802 F.2d 790 (5th Cir. 1986) ............................ 5, 12

*Ex parte Young*, 209 U.S. 123 (1908) ........................................ 22

*Federal Election Commission v. Ted Cruz for Senate*, 596 U.S. 289 (2022) ............... 24

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)....................................................20

*Gratz v. Bollinger*, 539 U.S. 244 (2003)...........................................1, 7, 11

*Grutter v. Bollinger*, 539 U.S. 306 (2003) ........................................22

*In re Southern Recycling, LLC*, 982 F.3d 374 (5th Cir. 2020) ................................. 3, 5

*Lopez v. City of Houston*, 617 F.3d 336 (5th Cir. 2010)............................ 16

*Los Angeles County v. Davis*, 440 U.S. 625 (1979) ...................................... 19

*Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980) .............................2

*Montez v. Dep't of Navy*, 392 F.3d 147 (5th Cir. 2004) ........................................ 5, 12

*Northeastern Florida Chapter of Associated General Contractors of
    America v. City of Jacksonville*, 508 U.S. 656 (1993) ......................... 1, 4

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981)...................................3

*Pickett v. Texas Tech University Health Sciences Center*,
    37 F.4th 1013 (5th Cir. 2022) .......................................2, 5, 12

*Poindexter v. United States*, 777 F.2d 231 (5th Cir. 1985) ........................ 3, 5

*Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009)................... 20, 21

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) ................................... 21, 22

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020) .......................................22

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) .......................................22

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023) ........................................................... 1, 22

*Superior MRI Services, Inc. v. Alliance Healthcare Services, Inc.*, 778 F.3d 502 (5th Cir. 2015) ................................................................................ 3

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .......................................... 23

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) .........................................passim

**Other Authorities**

John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989 (2008) .................................. 23

## I.   PROFESSOR LOWERY HAS STANDING TO SUE BECAUSE HE IS "ABLE AND READY" TO APPLY TO TEXAS A&M AND HE HAS ALLEGED THAT THE UNIVERSITY'S HIRING PRACTICES PREVENT HIM FROM COMPETING ON AN EQUAL BASIS

The test for determining Article III standing in this case is straightforward: Professor Lowery has standing to sue if: (1) He stands "able and ready" to apply for a faculty position at Texas A&M; and (2) A discriminatory hiring practice prevents him from competing on an equal basis with female and non-Asian racial minorities. *See Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003); *Carney v. Adams*, 592 U.S. 53, 60-66 (2020). The defendants agree that this is the correct standard to apply. *See* Appellees' Br. at 34.[1] And a litigant's standing is determined by the world that existed when Professor Lowery sued on September 22, 2022; it is unaffected by post-filing events such as the enactment of SB 17. *See Carney*, 592 U.S. at 60 ("[S]tanding is assessed at the time the action commences" (citation and internal quotation marks omitted)).

The defendants do not (and cannot) deny that Professor Lowery alleged these elements of standing. ROA.170 (¶ 41) ("Professor Lowery … stands

---

1.   Much of the appellees' brief talks about whether Lowery's injury is "concrete," "particularized," or "certainly impending." *See* Appellees' Br. at 1. All of that is encapsulated in the two-part test for determining Article III standing to seek prospective relief against allegedly discriminatory practices. The Court should not be sidetracked by the defendants' invocations of other doctrinal jargon.

1

'able and ready' to apply for a faculty appointment at Texas A&M University"); ROA.171 (¶ 45) ("The pervasive and ongoing use of race and sex preferences and set-asides at Texas A&M University prevents Professor Lowery from competing with other applicants for these faculty positions on an equal basis. This inflicts injury in fact."). But the defendants have brought a "factual" rather than a "facial" challenge,[2] so Professor Lowery cannot defeat their Rule 12(b)(1) motion by demanding that the courts accept the allegations of his complaint. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (explaining distinction between "facial" and "factual" Rule 12(b)(1) motions); *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). The showing that Professor Lowery must make to defeat the defendants' factual Rule 12(b)(1) motion, as well as the standard of review that this Court must apply, differs for each of the two components of the standing inquiry.

**1. "Able and ready to apply."** Whether Professor Lowery stands "able and ready to apply" for a faculty position at Texas A&M is a jurisdictional fact that is unrelated to the merits of his case. The district court may therefore resolve this contested factual question in response to a Rule 12(b)(1) motion. *See Pickett v. Texas Tech University Health Sciences Center*, 37 F.4th 1013, 1030 (5th Cir. 2022) ("[W]hether district courts may resolve contested fact issues depends on the extent to which the jurisdictional question is inter-

---

2. ROA.773 (acknowledging that Texas A&M is "bringing a factual challenge with its motion to dismiss.").

twined with the merits." (emphasis removed) (citation and internal quotation marks omitted)); *In re Southern Recycling, LLC*, 982 F.3d 374, 381 (5th Cir. 2020) (courts may resolve Rule 12(b)(1) jurisdictional facts that "can be extricated from the merits and tried as a separate issue." (citation and internal quotation marks omitted)); *id.* at 381-82. Professor Lowery bears the burden of proving that he stands "able and ready to apply" by a preponderance of the evidence. *See Superior MRI Services, Inc. v. Alliance Healthcare Services, Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) ("To defeat a factual attack, a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence" (citations and internal quotation marks omitted)); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). And any factual findings that the district court makes are reviewed for clear error. *See Poindexter v. United States*, 777 F.2d 231, 236 (5th Cir. 1985) ("'[W]here the jurisdictional issue can be extricated from the merits and tried as a separate issue the findings of the district court must be accepted unless they are clearly erroneous.'" (quoting *Williamson*, 645 F.2d at 416 n.10)); *Southern Recycling*, 982 F.3d at 379; *Williamson*, 645 F.2d at 413.

But the "clearly erroneous" standard is inapplicable because the district court never denied that Professor Lowery stood "able and ready to apply" for a faculty appointment at Texas A&M. ROA.768-781. Instead, the district court faulted Lowery for not applying to Texas A&M before he sued. ROA.773-774. It is undisputed that Professor Lowery did not previously apply for a position at Texas A&M, but the test for standing turns on whether

Lowery was "able and ready to apply" to Texas A&M when he sued—not on whether he had previously applied. So this Court should review the "able and ready to apply" issue de novo, as there is no district-court finding to which this Court can defer,[3] and it should determine whether Professor Lowery has shown that he stands "able and ready to apply" for a faculty appointment at Texas A&M based on a preponderance of the evidence.

**2. Whether a discriminatory hiring practice prevents Professor Lowery from competing on an equal basis.** The second component of the standing inquiry is whether Texas A&M is discriminating in a manner that prevents Professor Lowery from competing on an equal basis with female and non-Asian minorities. *See Northeastern Florida*, 508 U.S. at 666. But *this* jurisdictional fact is "intertwined with" the merits of Professor Lowery's claims, because a failure to demonstrate that Professor Lowery is affected by the university's discriminatory hiring practice means that he cannot prevail on the merits of his Title VI or Title IX claims. The converse is also true, as proof that the university is subjecting Lowery to a competitive disadvantage on account of his race or sex will require a judgment in his favor. It is impossible for this jurisdictional fact to be "extricated from the merits and tried as

---

3.   *See* Appellees' Br. at 34 (acknowledging that "the district court needed only to reach the latter issue" and never made any findings regarding whether Professor Lowery stood "able and ready to apply").

a separate issue,"[4] because a ruling one way or the other on this jurisdictional fact compels a particular outcome on the merits.

A litigant is not required to prove the merits of his case in response to a Rule 12(b)(1) motion. And when a disputed jurisdictional fact is dispositive of the merits, a district court is not permitted to resolve that fact in response to a Rule 12(b)(1) motion, but must leave that fact to be litigated alongside other merits-related factual disputes. *See Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004) ("[W]here issues of fact are central both to subject matter jurisdiction and the claim on the merits, … the trial court must assume jurisdiction and proceed to the merits."); *id.* at 151 ("[T]he district court should not have resolved disputed facts dispositive of both subject matter jurisdiction and the merits of a[] … claim on a 12(b)(1) motion."); *Eubanks v. McCotter*, 802 F.2d 790, 792-93 (5th Cir. 1986) ("When the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action, the court should assume jurisdiction over the case and decide the case on the merits."); *Pickett*, 37 F.4th at 1030 ("[R]esolution of the jurisdictional issue on a 12(b)(1) motion [is] improper where the jurisdictional attack is intertwined with the merits of [a] claim." (citation and internal quotation marks omitted)); *Williamson*, 645 F.2d at 415 ("Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court … is to find that

---

4.    *Southern Recycling*, 982 F.3d at 381 (quoting *Williamson*, 645 F.2d at 416 n.10)); *Poindexter*, 777 F.2d at 236.

jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case."); *id.* ("[N]o purpose is served by indirectly arguing the merits in the context of federal jurisdiction."). So any district-court fact-finding on whether Texas A&M's hiring practices will actually subject Professor Lowery to a competitive disadvantage based on his race or sex is premature, and is not to be given deference but disregarded at this stage of the litigation. Professor Lowery needs only to prove, by a preponderance of the evidence, that he stands "able and ready to apply" for a faculty appointment at Texas A&M. And he needs only to allege (not prove) that the university's hiring practices subject him to a competitive disadvantage relative to female or minority faculty candidates.

### A. Professor Lowery Has Shown, By A Preponderance Of The Evidence, That He Stands "Able And Ready To Apply" For A Faculty Position At Texas A&M

Although the district court never denied that Professor Lowery stood "able and ready to apply" to Texas A&M when he filed his complaint, the defendants dispute this fact. *See* Appellees' Br. at 35. Yet none of their arguments or evidence do anything to refute Professor Lowery's declaration, which unequivocally announces and explains in detail how he stands "able and ready to apply" for a faculty appointment at Texas A&M. ROA.306-310 (¶¶ 3–21); Appellants' Opening Br. at 9–12.

The defendants claim that Professor Lowery "had no concrete intent to apply in the near future and had purposefully avoided applying." Appellees'

Br. at 35. But Professor Lowery explained that his present-day unwillingness to apply is attributable solely to the discriminatory hiring practices at Texas A&M, and that he stands "able and ready" to apply for a faculty appointment at Texas A&M and will do so as soon as the university eradicates these unlawful race and sex preferences:

> Although I stand "able and ready" to apply for a faculty appointment at Texas A&M University, I will not do so until I can compete on an even playing field with female faculty candidates and faculty candidates of other races. I would have already applied for a faculty position at Texas A&M University were the university not using these discriminatory hiring practices.

ROA.308 (¶ 12). Professor Lowery is still "able and ready to apply" to Texas A&M, even though he is holding off on applying until the university's discriminatory hiring practices are enjoined. And *Gratz* specifically holds that a potential applicant to a university is "able and ready" to apply even when he announces that he will not apply until the university scraps its use of racial preferences. *See Gratz*, 539 U.S. at 261-62 (conferring standing upon potential transfer student to challenge affirmative-action program because the district court found that he "intends to transfer to the University of Michigan *when defendants cease the use of race as an admissions preference*" (emphasis added)); *id.* at 262 ("After being denied admission, Hamacher demonstrated that he was 'able and ready' to apply as a transfer student *should the University cease to use race in undergraduate admissions. He therefore has standing to seek*

*prospective relief* with respect to the University's continued use of race in undergraduate admissions." (emphasis added)).[5]

The defendants also try to refute Professor Lowery's declaration by claiming that:

- Professor Lowery "renewed his appointment to the Salem Center at UT within days of suing A&M";[6]

- Professor Lowery "readily applied to [the University of Florida] notwithstanding its own diversity initiatives that mirrored what his complaint against A&M attacked";[7]

- Professor Lowery "sued UT to permanently protect his job";[8] and

- Professor Lowery "still has not applied to A&M even after SB 17 outlawed DEI offices, diversity statements, and discriminatory preferences at public universities and mandated state oversight of compliance."[9]

None of this shows or even suggests that Professor Lowery was not "able to apply" or "ready to apply" for a faculty position at Texas A&M when he sued, and Professor Lowery specifically addressed these facts and explained how he nonetheless remains "able and ready to apply" to Texas A&M de-

---

5.  *Gratz* emphatically refutes the defendants' claim that the only time "non-applicants" have standing to sue is when their application would be "futile." *See* Appellees' Br. at 37–38.

6.  Appellees' Br. at 35 (citing ROA.353).

7.  Appellees' Br. at 35 (citing ROA.258-68; ROA.830 (39:14-22)).

8.  Appellees' Br. at 35 (citing ROA.254-55 (¶ A); ROA.349 (¶¶ 61-62); ROA.358 (¶ 12)).

9.  Appellees' Br. at 35.

spite the defendants' efforts to question the sincerity of that assertion. ROA.308-310 (¶¶ 16–21).

With respect to his decision to apply for an appointment at the University of Florida, Professor Lowery declared:

> I stand "able and ready" to apply to Texas A&M despite my decision to formally apply for a faculty appointment at the University of Florida. I expect that Florida will soon get rid of DEI at public universities given House Bill 999, and the position for which I applied was at a college that was set up to be free of DEI and other policies that subordinate meritocracy to diversity. So the fact that I applied for a faculty position at the University of Florida notwithstanding its current professions of commitment to diversity is unremarkable, and that does not in any way indicate that I am uninterested or not "able and ready" to apply for a faculty position at Texas A&M.

ROA.309 (¶ 17). Regarding his lawsuit against the University of Texas at Austin, Professor Lowery explained:

> The defendants are also wrong to claim that my lawsuit against the University of Texas at Austin indicates that I intend to stay there. I am suing UT-Austin because I am certain they are looking for a pretense to fire me, and my desire to avoid such an outcome does not in any way diminish my interest in seeking a faculty appointment from Texas A&M.

ROA.309 (¶ 19). Professor Lowery renewed his role at the Salem Center for the 2022–23 academic year[10] because he was still serving on the faculty at the University of Texas at Austin, and this does not in any way show that he is "unable" or "unready" to apply for appointments at other universities. In-

---

10.  ROA.353.

9

deed, Professor Lowery applied for an appointment at the University of Florida despite his decision to re-up at the Salem Center,[11] so there is no contradiction or tension between his continued involvement at the Salem Center and his ability and readiness to apply for positions at other universities.

Finally, the defendants note that Professor Lowery "still has not applied to A&M even after SB 17 outlawed DEI offices, diversity statements, and discriminatory preferences at public universities and mandated state oversight of compliance." Appellees' Br. at 35. But Professor Lowery claims that Texas A&M has no intention of complying with SB 17's ban on discriminatory hiring practices,[12] and there is no evidence or proof in the record showing that Texas A&M has adopted colorblind and sex-neutral hiring practices in response to SB 17. Indeed, even after the enactment of SB 17, Texas A&M *still* boasted on its website that it intends to consider race and sex in faculty hiring, as provided in Texas A&M's 2020–2025 Strategic Plan, and that the university will:

- In new hires, increase by 100% the diversity of our faculty to better reflect the diversity of our student body.

- Increase by 50% the retention of women faculty on the tenure track to better reflect the diversity of our student body.

---

11. ROA.170 (¶ 38); ROA.306 (¶ 3); ROA.307 (¶ 9).
12. ROA.379; ROA.401; ROA.548-551 (¶¶ 48–58); ROA.549 (¶ 52) ("[T]he defendants intend to continue using race and sex preferences in faculty hiring despite the enactment of SB 17 … and they will continue doing so unless and until they are enjoined by the Court.").

ROA.549 (¶ 53); ROA.563. Regardless, a litigant can stand "able and ready to apply" for a job even if he has not yet submitted an application, and the "able and ready" test does not turn on whether Professor Lowery has actually applied or imminently intends to, but simply on his *ability* to apply and his *readiness* to do so. There is no dispute that Professor Lowery is "able" to apply and is "ready" to apply for a faculty appointment at Texas A&M—and the district court made no finding to the contrary. That Professor Lowery has not yet applied is attributable to his desire to wait until he has assurance that his application will be considered in a colorblind and sex-neutral fashion, and not to any inability or unreadiness on the part of Professor Lowery. *See Gratz*, 539 U.S. at 261-62. As Professor Lowery explained in his declaration:

> I have a keen interest in the mission of Texas A&M University and would be honored to apply for a faculty position once they scrap their illegal and discriminatory hiring preferences.

ROA.308 (¶ 13). These statements are unrebutted, and Professor Lowery has shown, by a preponderance of the evidence, that he stood "able and ready to apply" for a faculty position at Texas A&M when he sued on September 22, 2022.

### B.     Professor Lowery Has Alleged That Texas A&M's Discriminatory Hiring Practices Prevent Him From Competing On An Equal Basis With Female And Non-Minority Faculty Candidates

Professor Lowery needs no further proof beyond showing that he stands "able and ready to apply" for a faculty appointment at Texas A&M. Whether Professor Lowery will actually be subjected to race or sex discrimination if he

applies is dispositive of the merits and cannot be resolved by courts in response to a Rule 12(b)(1) motion. *See Montez*, 392 F.3d at 150; *Eubanks*, 802 F.2d at 792-93; *Pickett*, 37 F.4th at 1030; *Williamson*, 645 F.2d at 415. As long as Professor Lowery has: (1) proven by a preponderance of the evidence that he stands "able and ready to apply," and (2) alleged that the university's use of race and sex preferences will prevent him from competing on an equal footing with women and non-Asian minorities,[13] then the courts must "assume jurisdiction and proceed to the merits." *Montez*, 392 F.3d at 150. That remains the case even though the defendants have brought a factual Rule 12(b)(1) motion, because Professor Lowery is not required to prove the merits of his case in response to a Rule 12(b)(1) motion to dismiss.

Yet the defendants insist that Professor Lowery must prove that he had "'applied to the challenged program at some point in the past,'" and prove that he will "personally" be subjected to race or sex discrimination if he applies in the future. *See* Appellees' Br. at 35–36 (quoting ROA.774). But there is no requirement that a plaintiff previously apply under the "able and ready" test, and there is no requirement that Professor Lowery prove that the university will discriminate against his job application on account of race or sex

---

13. There is no question that Professor Lowery has alleged that Texas A&M's hiring practices will subject him to race or sex discrimination if he applies. ROA.171 (¶ 45) ("The pervasive and ongoing use of race and sex preferences and set-asides at Texas A&M University prevents Professor Lowery from competing with other applicants for these faculty positions on an equal basis. This inflicts injury in fact.").

in order to defeat a Rule 12(b)(1) motion. Professor Lowery will eventually need this proof, but not at the Rule 12(b)(1) stage. The defendants are contending that every plaintiff who seeks prospective relief against a discriminatory employment practice must prove that they *will* be subjected to unlawful discrimination in order to establish jurisdiction. That requires a plaintiff to prove the merits of his claim at the Rule 12(b)(1) stage, and proof of that sort is not required until the parties have had a full opportunity for discovery.

### C. Professor Lowery Has Shown, By A Preponderance Of The Evidence, That Texas A&M's Discriminatory Hiring Practices Would Prevent Him From Competing On An Equal Basis With Female And Non-Minority Faculty Candidates When He Sued on September 22, 2022

Even if Professor Lowery were required to prove that he would personally encounter race and sex discrimination if he applied to Texas A&M, he has presented more than enough evidence to establish that Texas A&M and its business school were discriminating in favor of female and non-Asian minority faculty candidates when he sued on September 22, 2022. All of this evidence is described in the opening appellate brief, *see* Appellants' Br. at 35–39, and none of it was refuted by the district court. ROA.768-781. None of it is addressed by the defendants either, except for Professor Shane Johnson's e-mail of August 26, 2022, which the defendants misrepresent as referring to a "hypothetical" position rather than an actual hiring line. *Compare* Appellees' Br. at 31–32 *with* ROA.179 ("The underrepresented line would potentially be a third position, so yes reserved, but not one of our 'regular' positions.").

Hypothetical or not, the e-mail shows that the Mays Business School was giving discriminatory preferences to "underrepresented" faculty candidates when Professor Lowery sued, and the declaration from N.K. Anand does not refute this. ROA.324 (¶ 7) ("There is no position or faculty line at the Mays Business School that is 'reserved' for members of underrepresented minority groups."). This declaration is dated March 27, 2023, and is phrased in the present tense. *See id.* It does not deny that Mays Business School has had "reserved" faculty lines in the past or at the time that Professor Lowery sued. Nor does it deny that Mays Business School was giving hiring preferences to women and non-Asian racial minorities on September 22, 2022.

Nor do the defendants (or the district court) have anything to say about the website of Texas A&M's Office for Diversity, which boasts that the university intends to:

- "In new hires, increase by 100% the diversity of our faculty to better reflect the diversity of our student body"; and

- "Increase by 50% the retention of women faculty on the tenure track to better reflect the diversity of our student body."

ROA.406. This webpage claims that this is part of Texas A&M's 2020–2025 Strategic Plan, and this was on the university's website when Professor Lowery sued on September 22, 2022. This was a statement of university-wide policy, with no carveout for the Mays Business School.

Finally, the defendants have never produced any evidence or declarations showing that the Mays Business School was engaged in colorblind and sex-

neutral faculty hiring when Lowery sued on September 22, 2022. The defendants do not even *claim* that this was the case, either in the district court or on appeal. There is no right to remain silent in civil litigation,[14] and the university's officials—who know full well whether and to what extent race and sex preferences are being used in faculty hiring—should be expected to deny Lowery's allegations if they want a district court to issue a finding that Lowery faces *no* risk of race or sex discrimination if he applies for a faculty position. To be sure, it is Lowery and not the university who bears the burden of proof, but Lowery has produced highly incriminating evidence with Johnson's e-mail and the Office for Diversity's website. ROA.179; ROA.406. For the university to respond to this evidence with lawyerly and carefully crafted declarations,[15] rather than a full-throated denial that the Mays Business School had been employing race or sex preferences at the time that Lowery sued, is enough to show that Lowery has not only demonstrated by a preponderance of the evidence that he would encounter race and sex discrimination as a job applicant, but that any district-court finding to the contrary is clearly erroneous. So even if one believes that Lowery needed to prove and not merely allege that he would actually encounter race and sex

---

14. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

15. *See, e.g.*, ROA.324 (¶ 7) ("There *is* no position or faculty line at the Mays Business School that is 'reserved' for members of underrepresented minority groups." (emphasis added)).

discrimination in response to the defendants' Rule 12(b)(1) motion, he did more than enough to satisfy that burden.

## II. THE DISTRICT COURT SHOULD HAVE ALLOWED PROFESSOR LOWERY TO TAKE DISCOVERY BEFORE RULING ON THE FACTUAL EVIDENCE IN THE DEFENDANTS' RULE 12(b)(1) MOTION

Courts should not resolve disputed factual issues in response to a Rule 12(b)(1) motion without affording the plaintiff an opportunity for discovery. *See Williamson*, 645 F.2d at 414. Professor Lowery requested jurisdictional discovery; it was not granted. ROA.401; ROA.404. The defendants' claim that Lowery could only have obtained jurisdictional discovery on Article III standing issues is false; ripeness and mootness also pertain to subject-matter jurisdiction[16] and Lowery was equally entitled to take discovery on these matters. Lowery's district-court briefing also made clear that he was contesting the factual bases for the defendants' mootness and ripeness arguments as well their Article III standing arguments.[17]

---

16. *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) ("Ripeness is a component of subject matter jurisdiction"); *Escobedo v. Estelle*, 655 F.2d 613, 614 (5th Cir. 1981) ("[M]ootness goes to the heart of the federal courts' subject-matter jurisdiction under article III, section 2 of the Constitution").

17. ROA.401 ("The defendants' mootness argument also requires that Mr. Lowery be allowed an opportunity for discovery before this Court determines whether the defendants have carried their 'heavy' burden of demonstrating mootness."); ROA.404 ("Mr. Lowery is entitled to take discovery on whether and to what extent the defendants intend to comply with SB 17's prohibitions on race and sex discrimination in faculty

The defendants claim that Lowery had ample opportunity to 'develop and argue' the relevant facts because he was able to gather evidence on his own and submit that evidence and supporting declarations to the court. *See* Appellees' Br. at 49. But none of that enabled Lowery to use the tools of discovery to obtain factual evidence from the defendants, which is needed to uncover whether and to what extent Texas A&M is discriminating on account of race and sex in its faculty hiring. They also claim Lowery "waived" jurisdictional discovery by acceding to the defendants' request to stay discovery pending the district court's ruling on their motions to dismiss. *See* Appellees' Br. at 49 (citing ROA.129). But Lowery agreed to this stay of discovery as a professional courtesy before the defendants even filed their motion to dismiss, and it was not clear that the defendants were even asserting a "factual" rather than a "facial" challenge to the court's jurisdiction until they filed their reply brief. ROA.311-318. Once it became obvious that the defendants were seeking a mootness dismissal based on disputed factual issues surrounding their intended compliance with SB 17, ROA.389-394, Lowery immediately asked the district court to allow jurisdictional discovery. ROA.401; ROA.404. And Lowery's district-court briefing made clear what discovery he sought: He wanted discovery on whether Texas A&M would actually comply with SB 17 and implement colorblind and sex-neutral hiring practices. *Compare* ROA.404 ("Mr. Lowery is entitled to take discovery on

hiring … A dismissal for mootness would be premature absent an opportunity for discovery").

whether and to what extent the defendants intend to comply with SB 17's prohibitions on race and sex discrimination in faculty hiring"), *with* Appellees' Br. at 49 (falsely asserting that Lowery "never specified the discovery he sought"). The defendants cannot fault Lowery for his "failure to take any formal action to compel discovery"[18] when a court order staying discovery was in effect and remained in effect despite Lowery's requests to allow jurisdictional discovery. ROA.129.

The defendants are equally wrong to say that Lowery failed to allege "specific facts" that demonstrated the need for jurisdictional discovery. All of these "specific facts" are listed at ROA.402-403, and in the proposed amended complaint that the district court disallowed. ROA.548-551 (¶¶ 48–58); ROA.548 ("Facts Regarding the Continued Existence of an Article III Case or Controversy" (all caps removed)). Many of these "specific facts" are described in the opening appellants' brief, with citations to pages in the record showing where they were brought to the attention of the district court. *See* Appellants' Opening Br. at 37–38. Lowery contested at every turn the defendants' claims that they would comply with SB 17 and implement colorblind and sex-neutral hiring practices, and he produced specific evidence undercutting those claims that he was able to dig up on his own and without the benefit of discovery. *See id.* All of this demonstrated the need for further factual development before the district court could rule on the defendants' ju-

---

18.  Appellees' Br. at 49.

risdictional objections. It was an abuse of discretion to deny the jurisdictional discovery that Lowery needed to effectively contest the defendants' claims of mootness.

## III. Professor Lowery's Claims Are Neither Moot Nor Unripe

### A.     Professor Lowery's Claims Are Not Moot

The defendants repeat the district court's assertion that the enactment of SB 17 moots Lowery's claims. *See* Appellees' Br. 39–44. The argument does not work because: (1) Lowery denies that the defendants intend to comply with SB 17; and (2) SB 17's ban on race and sex discrimination in faculty hiring does not impose new legal obligations on Texas A&M because it is redundant of Title VI and Title IX, which already prohibited race and sex discrimination at Texas A&M before the enactment of SB 17. None of the cases that the defendants cite do anything to refute Lowery's objections to mootness, because none of those cases involved redundant legislation that simply repeated what statutory law had already required, and none of them involved disputes over the defendants' intent to comply with the new statutory enactment. *See* Appellees' Br. at 41 (citing authorities).

The defendants bear the "heavy" burden of proving mootness,[19] so they must prove and not merely assert that they will comply with SB 17. That remains the case regardless of whether their compliance with SB 17 is regarded

---

19. *See Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) ("The burden of demonstrating mootness 'is a heavy one.'" (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632-33 (1953)).

as an act of "voluntary cessation."[20] The defendants always bear the burden of proving mootness, including mootness that arises in response to a new statutory enactment, and the burden is always a "heavy" one. *See Carr v. Alta Verde Industries, Inc.*, 931 F.2d 1055, 1064 n.7 (5th Cir. 1991) ("The defendant also has the burden of proof if he asserts that his compliance with the Act subsequent to the complaint moots the action."); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) ("[A] defendant has a heavy burden to prove that the challenged conduct will not recur once the suit is dismissed as moot"). Voluntary cessation makes this already heavy burden even heavier by requiring the defendant to show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation and internal quotation marks omitted). But even outside the context of voluntary cessation, the defendants must still produce *evidence* and not mere assertions that they will never again use race or sex preferences in faculty hiring—especially when Lowery denies that the defendants intend to comply with SB 17.

---

20. The defendants falsely claim that our opening brief characterizes the enactment of SB 17 as an act of "voluntary cessation." *See* Appellees' Br. at 41. We never said that anywhere in our opening brief, and any assertion to that effect would be incompatible with *Daves v. Dallas County*, 64 F.4th 616, 633-34 (5th Cir. 2023) (en banc). We addressed the "good faith" presumption for government officials only because the district court had relied on it, not because the voluntary-cessation doctrine applies. *See* Appellants' Opening Br. at 44–45; ROA.778 ("Texas A&M is entitled to a presumption of good faith that it will comply with SB 17").

Yet the defendants insist that the mere enactment of SB 17 moots this case, and they will not produce declarations or evidence showing or even suggesting that they will implement colorblind and sex-neutral hiring practices in response to the new law. They present two arguments for why declarations or evidence are unnecessary. First, they cite *Boudreaux v. Louisiana State Bar Ass'n*, 86 F.4th 620 (5th Cir. 2023), and claim that there is no requirement that they "renounce [their] prior conduct in order to moot a case." *Id.* at 630; Appellees' Br. at 43. But Lowery is not demanding that the defendants "renounce" their "prior" conduct; he is asking only that they produce evidence showing that they will comply with SB 17 going forward. Second, the defendants claim that they need not produce evidence of their intent to comply with SB 17 because they should be entitled to a "presumption of good faith as government agents," even though they acknowledge that the Fifth Circuit has never extended this "presumption of good faith" to public universities. *See* Appellees' Br. at 43 (citing *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020)). There are many problems with this argument.

The first problem is that the good-faith presumption applies only when a government defendant *voluntarily* changes its behavior in response to a lawsuit. *See Sossamon*, 560 F.3d at 325 ("[C]ourts are justified in treating a *voluntary* governmental cessation of possibly wrongful conduct with some solicitude"). The named defendants in this case did not voluntarily abandon their discriminatory hiring practices; SB 17 was imposed upon them by the state

legislature. There is no presumption of good faith that attaches when a defendant is compelled by state law to change its behavior, rather than voluntarily changing its behavior on its own initiative in response to a lawsuit.

The second problem is that the Fifth Circuit has never extended the "presumption of good faith" to university officials and employees. *See Speech First*, 979 F.3d at 328. The defendants correctly observe that the Fifth Circuit has not foreclosed this possibility either, and they urge this Court to follow rulings from the Sixth and Seventh Circuit that extend the good-faith presumption to public universities. *See* Appellees' Br. 43 (citing *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019), and *Speech First, Inc. v. Killeen*, 968 F.3d 628, 646 (7th Cir. 2020)). The suggestion is ill-advised. Neither opinion contains any reasoning beyond observing that a public university is an "arm of the state," and the Supreme Court's recent pronouncement in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023), repudiates the deference that previous court decisions gave to university officials who implement and oversee regimes of racial preferences. *See id.* at 217 (rejecting the "deference" conferred by *Grutter v. Bollinger*, 539 U.S. 306, 328 (2003)). Nor is there any reason to believe that university officials should be trusted to comply with SB 17 (or similar types of laws) when they have openly flouted the pre-existing statutory bans on race and sex discrimination in Title VI and Title IX. Finally, university officials cannot invoke their status as "arms of the state" when they are being sued for violating federal law under *Ex parte Young*, 209 U.S. 123, 159-60 (1908).

The *Ex parte Young* fiction depends on the idea that an officer who violates federal law is a private wrongdoer rather than part of the state, and can therefore be sued despite sovereign immunity. *See* John Harrison, *Ex Parte Young*, 60 Stan. L. Rev. 989, 995 (2008). The appellees' discussion of *Ex parte Young* is non-responsive to this argument. *See* Appellees' Br. at 43–44.

## B.     Professor Lowery's Claims Are Ripe

The test for ripeness turns on "the fitness of the issues for judicial decision" and the "hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). The issues are fit for review because they present pure questions of law, and withholding judicial consideration will impose hardship on Professor Lowery. *See* Appellants' Opening Br. at 43. The defendants have not refuted any of this. They also have not explained how the ripeness doctrine requires a showing that extends beyond the requirements of Article III standing. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (casting doubt on whether "ripeness" can defeat justiciability once Article III standing has been established).

The defendants complain that "the record is necessarily underdeveloped" with regard to "the current outlook." Appellees' Br. at 45. But the remedy for that is to allow discovery, not dismiss the case as unripe. The record is of course underdeveloped because the case hasn't been allowed to proceed to discovery. That does not allow a court to dismiss a case as unripe before discovery can begin. Professor Lowery is entitled to take discovery on whether and how the defendants intend to comply with SB 17, and whether

Texas A&M will continue giving discriminatory preferences to women and non-Asian racial minorities while publicly proclaiming that it is "complying" with the new law. All of this is ripe for resolution now, especially given the evidence of Texas A&M's past violations of federal anti-discrimination laws such as Title VI and Title IX. ROA.179; ROA.406.

The defendants also dismiss the alleged "hardship" to Professor Lowery from withholding judicial consideration as a self-inflicted harm, because Lowery is unwilling to apply to Texas A&M until the use of race and sex preferences in faculty hiring are eradicated. *See* Appellees' Br. at 46. But the Supreme Court has rejected the idea the "self-inflicted" injuries can be disregarded when considering Article III injury, and no different result should obtain when assessing "hardship" under ripeness doctrine. *See Federal Election Commission v. Ted Cruz for Senate*, 596 U.S. 289, 296-97 (2022). Lowery wants to apply to Texas A&M now and he needs prompt relief so that his application can be considered on a colorblind and sex-neutral basis.

## IV. The District Court Abused Its Discretion In Denying Professor Lowery's Motion For Leave To Amend His Complaint

If this Court reverses or vacates the jurisdictional dismissal and remands for further proceedings, then it should instruct the district court to grant leave for Professor Lowery to file his proposed second amended complaint. The defendants do not (as far as we can tell) dispute this. *See* Appellees' Br. at 51–54. We of course agree with the defendants that the leave-to-amend is-

sue will become moot if this Court affirms the jurisdictional dismissal. *See id.* at 53. Our leave-to-amend argument is premised on a ruling from this Court that reverses or vacates the jurisdictional dismissal. The defendants do not explain why leave to amend would fail to satisfy the "freely give" or "just terms" standards of Rule 15(a)(2) or Rule 15(d) in that situation.

## Conclusion

The judgment of the district court should be vacated, and the case remanded for further proceedings.

Respectfully submitted.

Gene P. Hamilton
Vice-President and General Counsel
America First Legal Foundation
611 Pennsylvania Avenue SE, #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

Dated: June 14, 2024

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff-Appellant*

## Certificate Of Service

I certify that on June 14, 2024, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Fifth Circuit and served through CM/ECF upon:

M. Carter Crow
Layne E. Kruse
Paul Trahan
Ryan Meltzer
Jesika Silva Blanco
Norton Rose Fulbright LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
(713) 651-5151 (phone)
(713) 651-5246 (fax)
carter.crow@nortonrosefulbright.com
layne.kruse@nortonrosefulbright.com
paul.trahan@nortonrosefulbright.com
ryan.meltzer@nortonrosefulbright.com
jesika.blanco@nortonrosefulbright.com

*Counsel for Defendants-Appellees*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 6,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

*/s/ Jonathan F. Mitchell*
JONATHAN F. MITCHELL
*Counsel for Plaintiff-Appellant*

Dated: June 14, 2024

### CERTIFICATE OF ELECTRONIC COMPLIANCE

Counsel also certifies that on June 14, 2024, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through http://www.pacer.gov.

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff-Appellant*